We'll hear argument now in the case of United States v. Hibshman. Mr. Stephens, may it please the Court. I think the basic question here is whether the district court was focusing on the nature of the offense or was engaged in an impermissible application of 3583. And there was a lot of emphasis in the district court's comments about deterring future crime. And what is remarkable about this record is that Hibshman had not committed a new crime. The court correctly found that this was a grade C violation of the conditions of supervised release. What about the fact that it was his second revocation hearing, and the prior revocation resulted in an additional 18 months, and the court commented on the fact that the prior 18-month revocation didn't deter him from going out in additional supervised release violations? That was already taken into account by the guideline calculation. But the court's commenting on it. The court's free to comment on it, and even if it's taken into account, the court's free to say this is a case where deterrence is even more important for the following reasons. How would the prior revocation have been taken into account in the guidelines? He didn't get offense-level points for that, criminal history points for that. I don't think that would have been reflected in the policy guidelines for supervised release revocation. The statute, 3583, talks about deterring new crimes, rather than whether a repeated supervised release violation is an aggravating factor. Yeah, but Mr. Stevens, you know from doing this that terms and conditions of supervised release are violated all the time for conduct short of new crime. Correct. Right? Yes. And here, what the district court judge was saying to your client was, I've got to do something to get your attention because these terms and conditions of supervised release seem to mean nothing to you. They mean so little to you that you can just drift off for three months, lose contact with your probation officer, and do whatever you want to do. Well, that ain't the way the world works when you're under supervised release. You know that from your prior experiences, Mr. Hibschman, and I've got to do something to get your attention here. Isn't that what happened here? So, no, it's not a new federal crime or state crime, but what difference does it make? Because being out of touch with your probation officer, whether it's for, you know, three months or whatever the time is. What about the drug defendant who says, I could care less about the requirement for drug testing? I'm not going to comply with it. It's a bunch of nonsense. And does that 10 or 12 times, and the district judge says, that's not up to you. Okay? Your supervised release is revoked, and you're going to do 24 months. It's not a federal crime to not show up to the drug test. It's a very bad idea. It can have very serious consequences. Typically, when that occurs, and he's taken into custody, and the drug test occurs, the defendant tests positive, and then there's a substantive revocation. All right. So I add that to my hypothetical. Okay. But it's not a crime. So you were starting with 3583 and the crime language. But there's all kinds of things you can do to violate your supervised release that are serious and not criminal, that can get you in a bunch of hot water. So I guess my issue with that is, is the non-reporting for a three-month period the kind of aggravating circumstance? And we know that it's not a crime. Is that the kind of aggravating circumstance? Well, that's what Judge St. Eve is pointing out, that he's not doing it against the backdrop of a crystal clean record or not doing it against the backdrop of confusion. He's a flagrant and repeat rule violator. And court order violator. The court ordered these conditions as part of supervised release. And he disregarded them. He took off. His whereabouts were unknown for three months. And that's his second violation that he was revoked on. There may have been other violations in there. He lies? He gets caught in a car accident and lies about who he is? The government did not offer any evidence on that issue. And I think the defendant said that he was present at the scene of an accident. He gave the wrong name, undoubtedly, because he didn't want to get hauled back. Hauled back into custody for absconding. Mr. Stevens, as you know, the whole point of sentencing somebody for a violation of supervised release is to sanction the individual for breaching the court's trust. That's the founding principle under supervised release revocations. And he blatantly violated the court's order here. It's hard to breach a court's trust more than directly violating an order. In fact, the court had issued a warrant for his arrest. I think that there is a fundamental difference between violations of conditions of supervised release and the commission of new crimes. The guidelines take into account, in fact, establish a different classification. And a grade C violation is necessarily a less serious event. Although it's an important sanction. And Mr. Hibsman did acknowledge that he had done this. And there was an appropriate guideline that was available to the court. It would have made sense to impose a 13-month sentence in this situation. But I'm suggesting that the court did not make an appropriate distinction between the grade C violation that occurred here and punishing a new crime. I think that's fundamentally what I am... My position is that under 3583, the deterrence of new crime is the appropriate statutory standard to be pursued. And that didn't occur. Any other questions? Thank you very much, Mr. Stevens. Mr. Whalen. May it please the court. Good morning, Your Honor. Nathaniel Whalen here again on behalf of the United States of America. The district court did not commit procedural or substantive error in imposing the sentence in this case. And I think Mr. Hibsman kind of got to the point at the end of his argument, which is the fact that the defendant didn't commit a new criminal act is accounted for in the policy statements. That's what makes it a grade C violation and what renders the policy statements lower. What the district court in this case said was that you have consistently thumbed your nose at the law, both at the state level, at the federal level. The fact that you violated a term of supervised release following an escape conviction, the district court found of note. And, you know, in terms of deterring a different criminal act, what 3553A says is the court is supposed to take into account deterrence of criminal conduct. And criminal conduct also includes failure to listen to the court's orders, comply with supervised release. These are things the district court should be taking into account under this court's precedent, and it's what it did in this case. Your Honors, in terms of just quick… Mr. Whalen, how do you respond to the defendant's argument in the brief that deterrence can't be relevant here, given that his term of supervised release is being terminated? Deterring future violations of supervised release is not implicated in this sentence, but that is what 3553A says. It's not focusing on deterring the defendant from violating the exact same thing he's in front of this court for. It's talking about deterrence, and this court's read both general and specific deterrence into that as well. Here we have a defendant who has not been deterred by his prior sentence, as Your Honor pointed out and as the district court pointed out. He got 18 months previously, and the district court kind of did some math in this case and said, well, I'm going to add three months for each month you absconded here on top of the 18 months, since the 18 months clearly wasn't enough, and it got to roughly the term that it was at here, the two-year term of imprisonment imposed in this case. Your Honor, just one factual point. The defense says that there's no evidence that he presented a wrong name at the stop. If the court looks at the revocation hearing transcript on page 21, that's when the defendant says that he gave the officers the wrong name, and then on page 23, he admits to telling the police officers that he was trying to convince the police officers he was a juvenile. Unless this court has any questions on any other issue, we would ask that you affirm the judgment below. Thank you. Thank you very much. The case is taken under advisement.